UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDGAR LAVERDE,<br><br>        Plaintiff,<br><br>   -against-<br><br>CAPITAL ONE HEALTHCARE FINANCE, a division of Capital One Services, Inc., and CIT GROUP INC.,<br><br>        Defendants. | Civil Action No.: 07 Civ. 4838 (BSJ) (GWG)<br><br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)
SUBMITTED BY DEFENDANTS CAPITAL ONE F.S.B. (ERRONEOUSLY
SUED HEREIN AS CAPITAL ONE HEALTHCARE FINANCE) AND
CIT BANK (ERRONEOUSLY SUED HEREIN AS CIT GROUP INC.)**

James M. Bergin
Lily M. Fan
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0050
(212) 468-8000

*Attorneys for Moving Defendants*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants Capital One F.S.B. (erroneously sued herein as Capital One Healthcare Finance) ("Capital One") and CIT Bank (erroneously sued herein as CIT Group Inc.) ("CIT") submit this memorandum of law in support of their motion to dismiss plaintiff Edgar Laverde's ("Plaintiff") Complaint.

## PRELIMINARY STATEMENT

This is the second lawsuit that Plaintiff has brought against Capital One and CIT based on a single credit transaction. His first action, *Laverde v. Vital Dent et al.*, No. 06-cv-7617 (S.D.N.Y.), alleged a variety of statutory and common-law claims based on purported misrepresentations regarding the amount of his healthcare loan. After briefing and argument on Defendants' Rule 12(b)(6) motion, Judge Daniels dismissed all such claims for failure to state a claim.[1] Undeterred, Plaintiff now brings a second action, once again alleging a spate of statutory and common-law claims, this time based on the variant theory that the Defendants misreported the size of his loan to consumer reporting agencies.

This action, like its predecessor, should never have been brought. Briefly, the allegations are as follows. A dental facility, Vital Dent, gave Plaintiff an estimate for dental services in the amount of $15,540. With Vital Dent's assistance, Plaintiff sought – and Capital One provided – a loan in that amount, which loan Capital One then sold to CIT. For reasons nowhere set forth in the Complaint, Vital Dent only performed $2,500 worth of dental services. Although Plaintiff

---

[1] This Court may take notice of the pleadings and papers filed in Plaintiff's prior action pursuant to Fed. R. Evid. 201. *See Trepel v. Dippold*, No. 04 Civ. 8310 (DLC), 2005 U.S. Dist. LEXIS 8541 at *9-10 (S.D.N.Y. May 9, 2005). A true and correct copy of Plaintiff's complaint filed in *Laverde v. Vital Dent et al.* is attached as Exh. 1 to the Declaration of James M. Bergin dated August 31, 2007, submitted in support of this motion. Judge Daniels' order dismissed all claims asserted against Capital One and CIT, but provided that Laverde could seek leave to replead certain claims against Capital One within 30 days; the dismissal was "with prejudice" as to CIT. *See* Bergin Decl. Exh. 2. After the 30-day period had expired, Laverde attempted to file an amended complaint asserting many of the claims asserted in the present action. Judge Daniels denied leave to file the proposed amended complaint; thereafter, Laverde filed the present action against Capital One and CIT. *See* Bergin Decl. Exhs. 3, 4. Vital Dent is not a defendant in the present action, but remains a defendant in *Laverde v. Vital Dent et al.*

demanded that Defendants should only bill him for this lower amount, Defendants purportedly misreported the size of the loan to consumer reporting agencies, and further reported that he was "late" in his payments. Based on these allegations, Plaintiff asserts claims for breach of the Fair Credit Reporting Act ("FCRA"), Fair Credit Billing Act ("FCBA"), Fair Debt Collection Practices Act ("FDCPA"), negligence and negligent misrepresentation, defamation, and infliction of emotional distress.

None of Plaintiff's causes of action states a viable claim for relief. His FCRA claims fail because the statutory provisions on which he relies either do not provide a private right of action or only do so under circumstances not presented in this case. His FCBA claim fails because that statute only applies to open-end credit – such as credit card debt – and has no application to closed-end credit such as Plaintiff obtained here. His FDCPA claim fails for the simple reason that neither of the Defendants are "debt collectors" within the meaning of that statute. His common-law claims are all barred by the express preemption provisions of the FCRA or by *res judicata*. In any event, most of his common-law claims are defective on their face.

Enough is enough. Plaintiff may have voluntarily agreed to borrow far more than he needed to cover his dental work, but that is not Defendants' fault. Plaintiff contends – and for purposes of this motion, Defendants do not dispute – that Vital Dent was slow to repay the unused portion of the loan; but again, that should not be held against Defendants. Plaintiff has now asserted *eleven* causes of action against Defendants, *none* of which has any legal merit. Put simply, this lawsuit is nothing but a grudge in search of a legal theory, and that is an entirely inappropriate use of the judicial system. Because none of Plaintiff's causes of action states a claim on which relief may be granted, this action should be dismissed forthwith.

**STATEMENT OF FACTS**

Plaintiff alleges that he went to a dental facility, Vital Dent, for a dental evaluation on March 6, 2006, and that Vital Dent gave him a cost estimate of $15,540 for dental work. Compl. ¶ 6. Plaintiff further alleges that Vital Dent arranged financing through Capital One to cover these costs, and that Capital One offered financing for the requested amount at 19.9% interest with payments to be made over 60 months. *Id*. ¶ 7. Plaintiff accepted Capital One's offer, in the full amount, on the same day, March 6, 2006.[2]

Plaintiff alleges that "on or about March 7, 2006," he called Capital One and asked the person to whom he spoke to "terminate the loan immediately." Compl. ¶ 8. Plaintiff alleges that nonetheless, Capital One funded the loan and soon thereafter sold it to CIT, who began sending him statements indicating that the principal amount of the loan was $15,540. *Id*. ¶ 9.

Plaintiff claims that he ultimately only received $2,500 worth of dental work from Vital Dent. *Id*. ¶ 10. He contends that "throughout the month of April 2006," he demanded that Vital Dent refund the unused portion of the loan. *Id*. ¶ 11. He further alleges that, at the same time, he demanded that Capital One and CIT "correct their billing and only charge the true amount due." *Id*. ¶ 14. Plaintiff alleges that "[o]n or about May, 2006," Capital One and CIT erroneously reported inaccurate information to credit reporting agencies. *Id*. ¶ 20.

---

[2] *See* Bergin Decl. ¶ 9 and Exh. 5 attached thereto. This exhibit contains documents produced by Plaintiff as part of his Rule 26 initial disclosures, including a "financing authorization form" executed by Plaintiff, a promissory note, and accompanying truth-in-lending disclosures. This Court may properly consider the loan documentation on this motion to dismiss because the Complaint repeatedly refers to the loan and because all of Plaintiff's claims arise out of and are integrally related to the amount of money he agreed to borrow. *See Int'l Audiotext Network v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("'when a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss") (internal citation omitted); *see also Chambers v. Time Warner Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002) ("[t]he contracts considered by the District Court in this case comfortably meet the test because they are integral to the Amended Complaint").

Based on the above allegations, Plaintiff asserts claims against Capital One and CIT for (i) violation of the Fair Credit Reporting Act (Count One); (ii) violation of the Federal Fair Credit Billing Act (Count Two); (iii) violation of the Fair Debt Collection Practices Act (Count Three); (iv) negligence and negligent misrepresentation (Count Four); (v) defamation (Count Five); and (vi) infliction of emotional distress (Count Six).

## ARGUMENT

### I. THE APPLICABLE STANDARD FOR A MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), dismissal for failure to state a claim is proper where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir. 1999) (internal citation omitted). All well-pleaded factual allegations in the Complaint are presumed to be true. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Charles W. v. Maul*, 214 F.3d 350, 356 (2d Cir. 2000). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (internal citation and quotation marks omitted). Moreover, where allegations in the complaint are contradicted by the documents on which the complaint is based, the documents are controlling and the contrary allegations should not be given weight. *Honess 52 Corp. v. The Town of Fishkill*, 1 F. Supp. 2d 294, 300 (S.D.N.Y. 1998); Wright & Miller, *Federal Practice & Procedure:* Civil 3d § 1357 (*see* text at n. 31 and accompanying citations).

## II. PLAINTIFF'S CLAIMS UNDER THE FAIR CREDIT REPORTING ACT FAIL AS A MATTER OF LAW.

Plaintiff alleges that in May 2006, Defendants violated the Fair Credit Reporting Act (the "FCRA") by "furnishing to credit reporting agencies inaccurate information as the amount of the debt or at least that the debt was disputed." Compl. ¶ 20. Specifically, Plaintiff contends that Defendants' purported inaccurate statements violated 15 U.S.C. § 1681s-2(a) (*see* Compl. ¶ 23) and 15 U.S.C. § 1681s-2(b) (*see* Compl. ¶¶ 21-22). Plaintiff's claims fail as a matter of law because (i) there is no private right of action under 15 U.S.C. § 1681s-2(a), and (ii) 15 U.S.C. § 1681s-2(b) does not impose any duty on a furnisher of credit information unless and until the furnisher receives a notice of dispute *from a credit reporting agency*. Plaintiff does not (and cannot) allege that any such report was received in this case, and thus his claim under 15 U.S.C. § 1681s-2(b) must fail.

### A. There Is No Private Right Of Action Under 15 U.S.C. § 1681s-2(a).

The FCRA imposes various obligations on financial institutions, including the duty not to report information to consumer reporting agencies that the financial institution knows to be inaccurate. 15 U.S.C. § 1681s-2(a)(1)(A). Although some of the obligations imposed by the FCRA may be enforced directly by consumers, *see* 15 U.S.C. § 1681n; 15 U.S.C. § 1681o (imposing civil liability, respectively, for willful and negligent violations of the Act), Congress specifically exempted section 1681s-2(a) (the statutory provision on which Plaintiff relies) from private enforcement by (i) providing that sections 1681n and 1681o ". . . do not apply to any violation of" section 1681s-2(a), *see* 15 U.S.C. § 1681s-2(c)(1), and (ii) providing that the provisions of section 1681s-2a "shall be enforced exclusively" by federal and state officials. *See* 15 U.S.C. § 1681s-2(d).

Courts have recognized repeatedly that there is no private right of action for alleged violations of section 1681s-2(a). *See*, *e.g.*, *Prakash v. Homecomings Financial,* No. 05-CV-2895 (JFB) (VVP), 2006 U.S. Dist. LEXIS 62911 at *6 (E.D.N.Y. September 5, 2006) ("[T]he plain, unambiguous language of the [FCRA] limits the enforcement [] to government agencies and officials."); *see also Kane v. Guaranty Residential Lending, Inc.,* No. 04-CV-4847 (ERK), 2005 U.S. Dist. LEXIS 17052 at *9-10 (E.D.N.Y. May 9, 2005) ("It is [] well established that an individual consumer may not bring a cause of action for the violation of Section 1681s-2(a)."); *see also Redhead v. Winston & Winston, P.C.*, No. 01-CV-11475 (DLC), 2002 U.S. Dist. LEXIS 17780 at *12 (S.D.N.Y. Sept. 20, 2002) ("There is no private cause of action under Section 1681s-2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials"). As a result, Plaintiff's claim under section 1681s-2(a) should be dismissed forthwith.

**B.     Plaintiff Has Failed To State A Claim Under 15 U.S.C. § 1681s-2(b).**

Plaintiff's claim under section 1681s-2(b) fares no better. That section requires furnishers of credit information to conduct an investigation regarding disputed credit information and report the results of such investigation to consumer reporting agencies. *See* 15 U.S.C. § 1681s-2(b)(1). However, the obligations under this section are *only* triggered "[a]fter receiving notice pursuant to section 1681i(a)(2) of" the FCRA. *Id*. Significantly, the "notice" referred to here can only come from a *consumer reporting agency* after it receives notice of a dispute from a consumer. *See* 15 U.S.C. § 1681i (a)(2).

Plaintiff nowhere alleges that the Defendants ever received notice of a dispute from any consumer reporting agency, nor can he responsibly do so. Moreover, as the statute makes clear, the receipt of notice directly from a *consumer* is insufficient to trigger the obligations of section

6

1681s-2(b). *See Prakash,* 2006 U.S. Dist. LEXIS 62911 at *7-8.[3] Thus, Plaintiff's claim under this section fails as well, and Count One of the Complaint should be dismissed.

## III. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FAIR CREDIT BILLING ACT.

Plaintiff's claim for relief pursuant to the Fair Credit Billing Act ("FCBA") fails because that statute only applies to open-ended credit (such as credit card debt), and has no application to closed-ended credit such as the loan that Plaintiff obtained to finance his dental work.

The Truth in Lending Act ("TILA"), of which the FCBA is a part, draws careful distinctions between open-ended and closed-ended credit, and different statutory and regulatory provisions apply to each. The terms are clearly defined in Regulation Z (the implementing regulations for TILA) as follows. "Open-end credit" is:

> consumer credit extended by a creditor under a plan in which: (i) the creditor reasonably contemplates repeated transactions; (ii) the creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) the amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid.

12 C.F.R. § 226.2(a)(20). By contrast, "closed-end" credit is any consumer credit *other* than open-end credit. 12 C.F.R. § 226.2(a)(10).

Because open-end and closed-end credit transactions differ in many respects, TILA imposes different disclosure obligations for each. Open-end credit plans are regulated pursuant to 15 U.S.C. § 1637. Closed-end transactions are regulated under 15 U.S.C. § 1638. As an adjunct to TILA's regulation of *open-end* credit plans, the FCBA requires creditors, upon receipt of written notice from a consumer challenging the accuracy of a billing statement, to (i)

---

[3] "Even though the statute only refers to obligations after a *credit agency* has provided notice of a dispute, plaintiff argues that this section can be triggered if some other entity or person provides such notice to the furnisher of information. This Court disagrees." *Prakash* at *8.

7

acknowledge receipt of the notice, and (ii) thereafter either explain the reasons why the billing statement is correct or make appropriate corrections thereto.  *See* 15 U.S.C. § 1666(a)(A), (B).  However, the FCBA expressly provides that these requirements *only* apply in cases where the creditor receives notice from the consumer pursuant to the terms of *15 U.S.C. § 1637*, the section of TILA setting forth disclosure obligations for *open-end* credit transactions.[4]  The FCBA contains *no* corresponding references to – or obligations related to – TILA's disclosure requirements for closed-end credit.  *See Jacobs v. Marine Midland Bank, N.A.*, 124 Misc. 2d 162, 163, 475 N.Y.S.2d 1003, 1004 (N.Y. Sup. Ct. 1984).

> As the court explained in *Jacobs*:
>
> Subdivision (a) of section 1666, therefore, read in conjunction with section 1637, and by its reference to section 1637 alone, expresses a legislative intent to enact rules regarding the correction of billing errors in open-end consumer credit transactions only.  Moreover, since there is a separate section with regard to consumer credit transactions other than open-end credit plans (§ 1638), and no reference is made to that section or any other section concerning such transactions by the provision of section 1666 relating to the commencement of billing error inquiries, an irrefutable inference must be drawn that section 1666 applies only to open-end credit plans.

*Id*. at 165, 475 N.Y.S.2d 1003, 1005.  Moreover, as *Jacobs* noted, Regulation Z explicitly confirms that section 1666 "does not apply to credit other than open end" credit."  *Id*. at 1005-06 (*quoting* 12 C.F.R. § 226.14).

As defined in TILA and in Regulation Z, Plaintiff's healthcare loan was plainly a "closed-end" credit, because he engaged in a single borrowing of a fixed amount.  For the reasons stated above, the provisions of the FCBA on which Count Two is based have no

---

[4] Specifically, the obligations set forth under section 1666(a) only apply "[i]f a creditor, within sixty days after having transmitted to an obligor a statement of the obligor's account in connection with an extension of consumer credit, receives at the address disclosed under section 1637(b)(10) of this title a written notice . . . . from the obligor . . . ."  As noted in text, section 1637(b)(10) is part of TILA's provisions regulating *open-end* credit.

application to Plaintiff's loan.  As a result, Plaintiff's efforts to state a claim under the FCBA must fail, and Count Two should be dismissed.[5]

## IV.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

Plaintiff's claim for purported violations of the Fair Debt Collection Practices Act ("FDCPA") fails because neither of the Defendants in this case is a "debt collector" as that term is defined under the FDCPA.

Plaintiff alleges, without any greater particularity, that "Defendant [*sic*] violated 15 U.S.C. 1692e(8) by communicating false credit information and failing to communicate that the debt is disputed."  *See* Compl. ¶ 33.  However, this statute only applies to "debt collectors."  *See* 15 U.S.C. 1692e ("A *debt collector* may not use any false, deceptive, or misleading representation . . .") (emphasis added); *Daros v. Chase Manhattan Bank*, 19 Fed. Appx. 26, 27 (2d Cir. 2001) ("In order to be subject to liability under the FDCPA, the person attempting to collect a debt must be a 'debt collector.'").  Plaintiff nowhere explains why either of the defendants in this case are "debt collectors" for FDCPA purposes, and the statutory definition makes it clear that they are not.

As Plaintiff concedes, Capital One offered (and ultimately provided) the original financing for Plaintiff's dental work.  Compl. ¶¶ 6-7.  By its terms, the FDCPA's definition of "debt collector" expressly excludes "any person collecting or attempting to collect any debt . . . to the extent such activity concerns a debt which was *originated by such person*."  15 U.S.C.

---

[5] Defendants note, for the record, that even if the FCBA were potentially applicable to Plaintiff's loan, its obligations are only triggered upon receipt of *written* notice from the consumer setting forth certain information.  *See* 15 U.S.C. § 1666(a).  In his factual allegations, Plaintiff nowhere alleges that he ever provided written notice to either Capital One or CIT, and the unsupported reference in Count Two to "Plaintiff's dispute letter mailed by *her* [*sic*] attorney" does not satisfy this defect.  *See* Compl. § 28 (emphasis added).

9

§ 1692a(6)(F)(ii) (emphasis added). Because Capital One originated Plaintiff's loan, it is not a "debt collector" for purposes of that loan.

Plaintiff's claim against CIT fails for similar reasons. As Plaintiff acknowledges, Capital One sold Plaintiff's loan to CIT immediately after funding the loan; indeed, CIT sent Plaintiff his first billing statements in the same month the loan originated. *See* Compl. ¶ 9. Once again, the FDCPA specifically excludes entities in CIT's position from the definition of "debt collector" – in this case, by excluding "any person collecting or attempting to collect any debt . . . to the extent such activity concerns a debt which was *not in default at the time it was obtained by such person*." 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added). Because CIT acquired Plaintiff's loan before any payments were due, CIT plainly qualifies for the exemption provided under 15 U.S.C. § 1692e(6)(F)(iii), and is therefore not a "debt collector" within the meaning of the FDCPA.

Accordingly, because neither of the Defendants is subject to the FDCPA provisions on which Plaintiff relies, Count Three should be dismissed.

## V.    PLAINTIFF'S COMMON-LAW CLAIMS ARE PREEMPTED BY THE FCRA.

The FCRA expressly preempts state law claims arising out of conduct subject to regulation under 15 U.S.C. § 1681s-2 concerning the accuracy of reports to consumer reporting agencies. *See* 15 U.S.C. § 1681t(b)(1)(F). Plaintiff's common-law claims are *all* based on Defendants' alleged misreporting of Plaintiff's credit information, and these are *exactly* the kinds of claims that are preempted under the FCRA. Because Congress has reserved this area exclusively for federal regulation, Plaintiff's state law claims must fail.

### A. Plaintiff's Common-Law Claims Fall Within The Scope Of Activity Regulated Under 15 U.S.C. § 1681s-2.

It is clear on the face of the Complaint that Plaintiff's common-law claims are all based on purported misreporting of credit information. Count Four alleges that Defendants "intentionally, willfully and maliciously and/or negligently misrepresented certain material facts" by, among other things, "billing Plaintiff on a charge he did not owe, erroneously reporting the entire amount as due and owing on Plaintiff's credit reports and failing to report that this charge was erroneous and disputed . . . ." *See* Complt. ¶ 37.[6] Count Five, sounding in defamation, alleges that Defendants "published and disseminated false and inaccurate information concerning plaintiffs [*sic*]" through their purported inaccurate reporting to consumer reporting agencies. *See* Complt. ¶¶ 41-43. Count Six, described as "infliction of emotional distress," is based on virtually identical allegations. *See* Complt. ¶ 49.

### B. The Plain Language Of 15 U.S.C. § 1681t(b)(1)(F) Bars Plaintiff's Common-Law Claims.

The FCRA provides that, with certain exceptions not relevant here, states may not impose any separate or additional obligations with respect to activities that are the subject of section 1681s-2 of the statute:

> No requirement or prohibition may be imposed under the laws of any State . . . *with respect to any subject matter regulated under . . . section 1681s-2*, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

---

[6] Paragraph 37 of the Complaint also alleges that Defendants' purported misrepresentations include "ignoring Plaintiff's demand to cancel the loan immediately," and "funding the loan on a date not disclosed to Plaintiff." These allegations fail to state a claim for misrepresentation (negligent or otherwise) because (i) they are not misrepresentations, and (ii) Plaintiff nowhere alleges any action taken in reliance thereon. Similarly, Paragraph 39 of the Complaint alleges that Defendants "failed to properly credit the Plaintiff for the charges and credits due Plaintiff" without attempting to explain how such conduct (even if true) could give rise to a claim for *misrepresentation*. Accordingly, these additional allegations should be dismissed as well.

11

15 U.S.C. § 1681t(b)(1)(F) (emphasis added). In this case, the gravamen of Plaintiff's common-law claims – inaccurate reporting to consumer reporting agencies – fall squarely within the scope of "subject matter regulated under section 1681s-2," because the very same conduct was the basis for Plaintiff's FCRA claim under section 1681s-2, set forth in Count One of the Complaint. Accordingly, under the express language of section 1681t(b)(1)(F), Counts Four, Five and Six are preempted.

        **C.**      **Plaintiff's Common-Law Claims Are Preempted Under Every Interpretation Of 15 U.S.C. § 1681t(b)(1)(F) Recognized In This Circuit.**

While the Second Circuit has not ruled on the preemptive scope of Section 1681t(b)(1)(F), that provision was extensively discussed – and broadly interpreted – in *Kane v. Guaranty Residential Lending, Inc.*, No. 04-CV-4847 (ERK), 2005 U.S. Dist. LEXIS 17052 at *23-25 (E.D.N.Y. May 9, 2005). As *Kane* observed, 15 U.S.C. § 1681t(b)(1)(F) is not the only preemption provision under the FCRA, and courts have taken varying positions as to how to read section 1681t(b)(1)(F)'s broad preemptive language in light of the earlier-enacted 15 U.S.C. § 1681h(e). *Kane*'s resolution of this issue – applying a "temporal" approach under which 15 U.S.C. § 1681h(e) preempts state-law claims based on acts that occurred *before* the furnisher of information had notice of any inaccuracies, and applying 15 U.S.C. § 1681t(b)(1)(F) to preempt claims based on acts *after* the furnisher had such notice – has been accepted by several district courts in this Circuit. *See Prakash*, 2006 U.S. Dist. LEXIS 62911 at *17-21; *Ryder v. Washington Mutual Bank, FA¸* 371 F. Supp. 2d 152, 154-55 (D. Conn. 2005). Notwithstanding Plaintiff's characterization of Count Four as one for "negligent misrepresentation," it is clear from the Complaint that Plaintiff contends Defendants inaccurately reported credit information *after* notice of the purported inaccuracies. Thus, following *Kane*, (i) Plaintiff's claims are

properly barred under 15 U.S.C. § 1681t(b)(1)(F), but (ii) in any event, to the extent Plaintiff alleges any mis-reporting before notice, his claims would be preempted under 15 U.S.C. § 1681h(e).

Another recent decision, *Holtman v. Citifinancial Mortgage Co., Inc.*, No. 05-cv-1571 (JCH), 2006 U.S. Dist. LEXIS 43730 (D. Conn. June 19, 2006), takes a different approach which would, however, lead to the same result in this case.  In *Holtman*, plaintiffs argued that, because section 1681h(e) permits the assertion of certain common-law tort claims, in order to avoid an interpretive conflict, 1681t(b)(1)(F) must be read so as to preempt only *statutory* claims, not common-law claims.  *See Holtman* at *10-11 (citing cases outside this Circuit following the so-called "statutory approach").  Rejecting this approach, the court found that the two preemption provisions govern fundamentally different subject matter – with section 1681t(b)(1)(F) applying to "persons who provide information to consumer reporting agencies," and section 1681h(e) applying only to "consumer reporting agencies and those who take adverse actions against consumers based on consumer reports."  *Id.* at *12-13.  Finding no conflict between section 1681t(b)(1)(F) and section 1681h(e), the *Holtman* court refused plaintiffs' invitation to read in a restriction on the scope of section 1681t(b)(1)(F) that was not supported by the language of the statute itself.[7]

Thus, under the *Holtman* court's approach, section 1681t(b)(1)(F) bars all of Plaintiff's common-law claims because, by its plain terms, the statute preempts *any* state law claims,

---

[7] *Kane* also rejected the "statutory" approach, finding that "because § 1681t(b)(1)(F) does not specify that it relates to statutes only," and because such an approach "greatly minimizes § 1681t(b)(1)(F)'s applicability," it was both "strained" and "unpersuasive."  *Kane*, 2005 U.S. Dist. LEXIS 17052 at *23-24 (citation omitted).

whether statutory or common law, and whether based on actions taken before or after notice, so long as those claims arise out of subject matter regulated under section 1681s-2.[8]

Regardless of whether this Court follows the plain language of 1681t(b)(1)(F), *Kane*'s temporal approach, or *Holtman*'s incisive interpretation of the respective reach of these preemption provisions, the result is the same: Congress did not intend to permit common-law claims for conduct regulated under section 1681s-2. Accordingly, Counts Four, Five and Six should be dismissed.

## VI. THE REMAINING PORTIONS OF PLAINTIFF'S COMMON LAW CLAIMS ARE BARRED BY THE DOCTRINE OF RES JUDICATA.

To the extent any remaining allegations set forth in Plaintiff's common law claims are not preempted by Section 1681t(b)(1)(F), they are barred by principles of *res judicata*. That doctrine precludes a party from bringing a new action where (i) a prior action was brought against the same defendants (or persons in privity with them), (ii) the prior action was decided on the merits, and (iii) the claims asserted in the new action were or could have been asserted in the prior action. *See In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985); *Cameron v. Church*, 253 F. Supp. 2d 611, 619 (S.D.N.Y. 2003). In several instances, Plaintiff's Complaint sets forth allegations that are taken *verbatim* from, or are functionally identical to, claims asserted in his prior action. Thus, for example, Count Four, sounding in "Negligence and Negligent Misrepresentation," asserts that "Capital One had a duty to the plaintiff to properly inform him for [*sic*] any and all actions taken pertaining her [*sic*] and her financing agreement with Capital One, to properly accept and credit any and all payments made by or in [*sic*] behalf of the

---

[8] While *Gross v. Washington Mutual, Inc.*, 06-cv-4340 (RLC), 2007 U.S. Dist. LEXIS 34837 at *14-15 (S.D.N.Y. May 10, 2007) did not engage in as extensive an analysis as *Holtman*, it reached a similar result, finding that section 1681t(b)(1)(F) "indicates a complete preemption of state law claims arising out of consumer disputes with 'furnishers of information,'" and finding section 1681h(e) inapplicable on the facts of that case.

plaintiff." This assertion is taken word for word from Count Five of Plaintiff's complaint submitted in *Laverde v. Vital Dent et al.* *See* Bergin Decl. Exh. 1 at ¶ 24. That claim was dismissed for failure to state a claim by Judge Daniels, and Plaintiff may not re-assert it here. *See* Bergin Decl. Exh. 2.

Similarly, Plaintiff's Count Six, sounding in "Infliction of Emotional Distress," asserts among other things that

> [a]s a result of the high monthly payments, plaintiff suffered anxiety and emotional distress from worrying about making each excessive monthly payment. Defendants are liable to the Plaintiff for damages, including (but not limited to) any and all medical bills that might derived [*sic*] from this situation that the plaintiff will be required to pay and reasonable attorney fee.

*See* Compl. ¶ 47. Once again, this claim is a *verbatim* repetition of the key allegations of Count Four of Plaintiff's prior Complaint. *See* Bergin Decl. Exh. 1 at ¶ 22. And once again, that claim was dismissed in its entirety by Judge Daniels. Because these claims are identical in every respect to claims asserted in Plaintiff's prior lawsuit, they are *res judicata* and may not be asserted here.[9]

## VII. PLAINTIFF FAILS TO ADEQUATELY ALLEGE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Plaintiff's claim for intentional infliction of emotional distress is entirely without foundation and borders on frivolousness. To state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct, (2) intent to cause severe

---

[9] Defendants believe that this Court could properly dismiss this entire action on *res judicata* grounds because, at bottom, *all* of plaintiff's current claims arise out of his contention that the true amount of his loan was only $2,500, not $15,540 – a contention that was at the heart of Laverde's earlier lawsuit. *See Waldman v. Village of Kiryas Joel, 207 F.3d 105, 108 (2d Cir. 2000)* (whether two actions spring from the same transaction or claim depends on "whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations . . . .") (citations and internal quotations omitted). Nonetheless, because a resolution of this issue would likely require a full reexamination of the issues raised and decided in the prior action – arguably a more complex task than deciding the present motion on its merits – Defendants have limited their *res judicata* arguments to those set forth above.

15

emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.  *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993).  The claimant's allegations must satisfy "a very high threshold":  "the conduct must be so outrageous and extreme 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Campoverde v. Sony Pictures Entm't*, 01 Civ. 7775 (LAP), 2002 U.S. Dist. LEXIS 18347, at *34 (S.D.N.Y. Sept. 27, 2002) (citations omitted).  "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance."  *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (citation omitted) (affirming dismissal because plaintiff failed to allege sufficiently egregious acts).

  The Complaint fails to satisfy *any* of the above elements.  Plaintiff claims that Defendants misreported his credit information to consumer reporting agencies, thereby causing him to suffer anxiety and emotional distress as well as denials of credit.  Even accepting these allegations as true, however, Plaintiff has failed to allege *any* conduct on the part of Capital One or CIT that was so outrageous and extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  *Campoverde*, 2002 U.S. Dist. LEXIS 18347, at *34.  Rather, the *only* actions alleged to have been performed by the Defendants consisted of (i) the extension of a loan by Capital One in an amount that Plaintiff later regretted, and (ii) submitting information about that loan to consumer reporting agencies.  These ordinary incidents of a debtor/lender relationship cannot conceivably provide a basis for a claim of "atrocious" or "intolerable" conduct.

  Indeed, even in cases where some defendants have been accused of harassment and other heavy-handed conduct in dealings with debtors, claims for intentional infliction of emotional

16

distress have failed. *See*, *e.g. Convoy v. AT&T Corp.*, 241 F.3d 242, 259 (2d Cir. 2001) (plaintiffs "were only harassed with numerous telephone calls from debt collectors" to collect the debt of their adult daughter-in-law; such conduct was insufficient to state a claim for intentional infliction of emotional distress); *see also Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F. Supp. 2d 233, 249 (S.D.N.Y. 2002) (while defendant's statements threatening to close down plaintiff's dealership "may have been heavy-handed or even unfair, . . . they hardly constitute the outrageous and atrocious conduct necessary to support a claim of intentional infliction of emotional distress.") (internal quotations omitted). *Nothing* in the present Complaint comes even close to the conduct alleged in *Convoy* or *Bronx Chrysler Plymouth* and, as those claims were found insufficient on their face, *a fortiori* Plaintiff's claims must fail as well.

      The Complaint also fails to meet the standard required for the second prong of this claim: "[p]laintiff must allege that [d]efendants knew or should have known that their conduct would have caused [him] severe emotional distress, and must also link the abusive conduct in question to the stress that led [him] to suffer [emotional distress]." *Goddard v. Citibank, N.A.*, 04 CV-5317 (NGG) (LB), 2006 U.S. Dist. LEXIS 19651, at *28 (E.D.N.Y. March 27, 2006) (Court found no intent on part of the creditor to cause severe emotional distress when it successfully brought a foreclosure proceeding against a defaulting plaintiff). Put simply, *nothing* in the Complaint even remotely gives rise to an inference that defendants had any reason to believe that a financial transaction with Plaintiff would cause him severe emotional distress.

      Because the Complaint does not begin to meet the high standards required for a claim of intentional infliction of emotional distress, this claim must be dismissed as a matter of law.

## CONCLUSION

For the reasons set forth herein, Plaintiff's Complaint against Defendants Capital One and CIT should be dismissed with prejudice forthwith.

Dated: August 31, 2007
      New York, New York

By:   /s/ James M. Bergin_____
     James M. Bergin
     Lily M. Fan
     MORRISON & FOERSTER LLP
     1290 Avenue of the Americas
     New York, New York  10104-0050
     Telephone:  (212) 468-8000
     Fax:  (212) 468-7900

*Attorneys for Defendants*
*Capital One F.S.B. (erroneously sued herein as "Capital One Healthcare Finance"), CIT Bank (erroneously sued herein as "CIT Group Inc.")*